**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| Windhaven Top Insurance Holdings LLC, *et al.*[1] | : Case No. 20-10524 (CSS) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : **Objection Deadline: September 9, 2020 at 4:00 p.m. (ET)** |
| | : **Hearing Date: September 16, 2020 at 10:30 a.m. (ET)** |

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER
APPROVING STIPULATION BY AND AMONG CHAPTER 7 TRUSTEE,
ATALAYA SPECIAL OPPORTUNITIES FUND VII LP, AND MIDTOWN
MADISON MANAGEMENT, LLC PURSUANT TO FED. R. BANKR. P. 9019**

Jeoffrey L. Burtch, in his capacity as the chapter 7 trustee (the "Trustee") for the bankruptcy estates in these jointly administered cases (the "Estates") hereby files this motion (the "Motion") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), seeking an order approving the stipulation by and among the Trustee, Atalaya Special Opportunities Fund VII LP ("Atalaya VII"), and Midtown Madison Management, LLC ("Midtown Madison", and together with Atalaya VII and their affiliates, collectively referred to herein as "Atalaya"), a copy of which is attached hereto, incorporated herein, and marked as Exhibit "1" (the "Stipulation"), and authorizing the Trustee to take any and all actions as may be

---

[1] The Debtors in these chapter 7 cases, along with each debtor's bankruptcy case number, are Windhaven Top Insurance Holdings, LLC, Case No. 20-10524 (CSS); Windhaven Insurance Services, LLC, Case No. 20-10525 (CSS); Windhaven Underwriters, LLC, Case No. 20-10526 (CSS), Windhaven Select, LLC, Case No. 20-10527 (CSS); Whited and Sons, LLC, Case No. 20-10652 (CSS); Clutch Analytics, LLC, Case No. 20-10653 (CSS); Clutch Wholesale Insurance Agency, LLC, Case No. 20-10654 (CSS); Windhaven Claims Management, LLC, Case No. 20-10655 (CSS); Windhaven National Holding Company, Case No. 20- 10656 (CSS); The Hearth Insurance Group, LLC, Case No. 20-10657 (CSS); Windhaven Insurance Holdings Corporation, Case No. 20-10754 (CSS). These cases are being jointly administered pursuant to this Court's Order Granting Motion of the Chapter 7 Interim Trustee for Entry of an Order Authorizing Joint Administration Pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1 [D.I. 28].

necessary and appropriate to implement the provisions of the Stipulation. In support of the Motion, the Trustee respectfully states and represents as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

4. On March 5, 2020, (the "First Petition Date"), Debtors Windhaven Underwriters, LLC ("WU"), Windhaven Select, LLC ("WS"), Windhaven Top Insurance Holdings LLC, and Windhaven Insurance Services, LLC ("WIS") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

5. On March 18, 2020 (the "Second Petition Date"), Debtors Clutch Analytics LLC ("Clutch Analytics"), Whited and Sons LLC, Clutch Wholesale Insurance Agency LLC, Windhaven Claims Management, LLC ("WCM"), Windhaven National Holding Company, and The Hearth Insurance Group, LLC (the "Hearth") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

6. April 3, 2020 (the "Third Petition Date," and together with the First Petition Date and Second Petition Date, the "Petition Dates," and each a "Petition Date"), Debtor Windhaven

Insurance Holdings Corporation ("WIHC") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

7. The Trustee was appointed by the Office of the United States Trustee to serve as the duly authorized Trustee for the Debtors' Estates and he continues to serve in this capacity.

8. On March 4, 2020, EG Insurance Holdco, LLC purchased assets that served as collateral of Atalaya pursuant to §§ 9-610, *et seq*. of Article 9 of the Uniform Commercial Code as in effect in the State of New York.

9. Various of the Debtors were parties to certain contractual relationships including the following:

   a. WIS was managing general agent for non-debtor Windhaven National Insurance Company ("WNIC") pursuant to a Managing General Agency Agreement, dated June 1, 2017, pursuant to which WIS maintains a premium escrow account o/b/o WNIC (Acct. xxxxxx1589) and the refund account o/b/o WNIC (Acct. xxxxxx1547).

   b. WS also acted as managing general agent for WNIC pursuant to a Managing General Agency Agreement, effective July 1, 2018, pursuant to which WS maintains a premium escrow account deposit o/b/o WNIC (Acct. xxxxxx9743) and the refund account o/b/o WNIC (Acct. xxxxxx3272).

   c. WCM acted as, among other things, claims administrator for WNIC pursuant to a Claims Administration Agreement, dated June 1, 2017.

   d. WU (f/k/a American Southwest Insurance Managers of Florida, LLC) acted as managing general agent and claims administrator for non-debtor Windhaven Insurance Company pursuant to a Managing General Agency and Claims Administration Agreement, dated December 30, 2005. WS also acted as managing general agent for WIC pursuant to a Managing General Agency Agreement, dated December 28, 2011.

   e. WCM acted as, among other things, claims administrator for WIC pursuant to an Executive Management and Claims Administration Agreement, dated October 1, 2015.

   f. Clutch Analytics licensed certain intellectual property to WS and WU pursuant to: (i) a Software License Agreement, dated July 1, 2015, between Clutch Analytics and WS; and (ii) a Software License Agreement, dated July 1, 2015, between Clutch Analytics and WU.

g. WIS acted as managing general agent for Old American County Mutual Fire Insurance Company pursuant to a Managing General Agency Agreement Number WINDHAVEN 15-001, dated September 11, 2015, pursuant to which WIS maintains the following three escrow accounts at City National Bank: (i) the Premium Escrow o/b/o Old American (Acct. XXXXXX5732); (ii) the Claims Account o/b/o Old American (Acct. XXXXXX5774); and (iii) the Refund Account o/b/o Old American (Acct XXXXXX5813).

h. The Hearth acted as general agent for State National Insurance Company, Inc. and United Specialty Insurance Company pursuant to a General Agency Agreement, dated July 1, 2017, between the Hearth, State National Insurance Company and reinsurer The Underwriting Member of Lloyd's Syndicate # 2357, pursuant to which the Hearth maintains the following three escrow accounts at CNB: (i) the Premium Escrow o/b/o State Nat'l Ins (Acct. XXXXXX9785); (ii) the Claims Account o/b/o State Nat'l Ins (Acct. XXXXXX9947); and (iii) the Refund Account o/b/o State Nat'l Ins (Acct XXXXXX9824).

10.     WIHC owns assets located in and/or organized under the laws of Bermuda, including equity interests in Windhaven Insurance LTD and six segregated accounts or cells known as: (a) the "Whited-Gold" Segregated Account; (b) the "Whited-Green" Segregated Account; (c) the "Dixie Red" Segregated Account; (d) the "Whited Grey" Segregated Account; (e) the "Whited Red" Segregated Account; and (f) the "Whited Silver" Segregated Account (collectively, the "Bermuda Assets").

11.     Atalaya has asserted that it holds a perfected first priority security interest in the Debtors' accounts and general intangibles, including the Debtors' rights in various prepetition agreements (all such prepetition agreements are hereinafter referred to as the "Prepetition Agreements," and the amounts owed thereunder, the "Receivables").

12.     The Trustee and Atalaya have discussed various open issues, including, among other things, their respective rights with respect to (i) the WNIC MGA Agreements and WNIC TPA Agreement, and WIS/WNIC Accounts, (ii) the WIC MGA Agreements and WIC TPA Agreement, (iii) the Clutch Licenses, (iv) the OA MGA Agreement and OA Accounts, (v) the SN MGA Agreement and SN Accounts, (vi) the Bermuda Assets and (vii) certain litigation and

other contingent recoveries. Following good faith negotiations, the Trustee, Atalaya VII and Midtown Madison have agreed to settle and compromise these matters and implement certain sharing arrangements, on the terms set forth herein in the Stipulation, to avoid the cost and uncertainty of litigation and effectuate the disposition of certain of the Debtors' assets constituting Atalaya's collateral that were excluded from the sale referenced in paragraph 8 hereinabove.

## RELIEF REQUESTED

13. By this Motion, the Trustee respectfully seeks an order approving the attached Stipulation (Exhibit "1") and authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the terms and provisions of the Stipulation.

## THE STIPULATION

14. The complete terms and conditions of the Parties' settlement are more fully set forth in the Stipulation (Exhibit "1"). A non-exhaustive description of the material provisions of the Stipulation includes the following:[2]

   a. The Trustee acknowledges that Atalaya holds a perfected first priority security interest in the Debtors' accounts and general intangibles, including the Debtors' rights in the Prepetition Agreements and the Receivables;

   b. Atalaya represents and warrants that the Receivables and the Debtors' rights in the Prepetition Agreements are not part of the assets sold to EGI prior to the commencement of these chapter 7 cases, and Atalaya has the right and authority to enter into sharing arrangements with respect to such assets as set forth herein;

   c. With the exception of any recoveries on account of the Bermuda Assets, and the Parties' agreement with respect to the OA premium trust account (which is the subject of a separate agreement and motion), the Parties agree that Atalaya and the Trustee shall evenly divide the gross amount that is recovered by the Trustee from or

---

[2] In the event of any inconsistency between the terms of the Stipulation and the summary of such terms set forth in this Motion, the terms of the Stipulation shall control, with the exception that the Parties acknowledge and agree that the disposition of the funds in the OA premium trust account is governed by a separate stipulation as noted in subsection (c) of this paragraph 14.

in connection with the Prepetition Agreements and the Receivables (including for the sake of clarity amounts held in any of the Debtors' bank accounts (other than amounts held in "operating accounts" which are separately addressed in the Stipulation)), after payment of Trustee's professionals' fees and costs incurred in connection with obtaining the recoveries on the Prepetition Agreements and the Receivables;

d. Atalaya and the Trustee shall be entitled to seventy-five percent (75%) and twenty-five percent (25%), respectively, of the net recoveries on account of the Bermuda Assets, after payment of the Trustee's professionals' fees and costs incurred in connection with obtaining the recoveries on the Bermuda Assets;

e. Notwithstanding anything to the contrary in the Stipulation, the Trustee shall retain $50,000.00 from the Debtors' accounts designated as "operating accounts," and shall remit the balance of the funds in such operating accounts to Atalaya;

f. Nothing in the Stipulation shall compromise Atalaya's rights as a general unsecured creditor, and Atalaya's general unsecured claim shall not be subject to re-characterization, subordination, set-off, or the like;

g. The Trustee, on behalf of himself, the Debtors, and their Estates, and each of their respective agents, assigns, successors, predecessors, heirs, executors, administrators, affiliates, and representatives, forever releases, acquits, and forever discharges: (i) Atalaya; (ii) Ivan Zinn, David Aidi, Raymond Chan, Drew Phillips, Matthew Rothfleisch and Josh Ufberg (together, "Atalaya's Partners"); and (iii) each of Atalaya and Atalaya's Partners' respective officers, directors, employees, principals, representatives, agents, advisors, consultants, professionals, attorneys, successors, assigns, predecessors, heirs, executors, and administrators (collectively, the "Atalaya Released Parties") from any and all claims, demands, dues, liabilities, actions, causes of action or the like, whether vested or contingent, known or unknown, arising any time before, on, or after the applicable Petition Date and through the date hereof made or able to be asserted by the Debtors or the Estates against the Atalaya Released Parties except with respect to any breach of their obligations hereunder.

15. In addition to the representations in the Stipulation, Atalaya has further confirmed and clarified its understanding that the Estates' rights to commissions (and any other rights and claims) under the WIC, WNIC, OA and State National MGA agreements (referenced in paragraph 9 herein) accruing prior to the Petition Date with respect to WIC and WNIC and the date of the sale to EGI with respect to OA and State National, and payable from funds in the relevant premium trust accounts for each of the WIC, WNIC, OA and State National insurance programs or otherwise, are property of the applicable Estates and were not sold to EGI.

**BASIS FOR RELIEF REQUESTED**

16. The Bankruptcy Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." Rule 9019 of the Bankruptcy Rules grants the Bankruptcy Court authority to approve settlements of claims and controversies after notice and a hearing. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)

17. Before approving a settlement under Rule 9019(a) of the Bankruptcy Rules, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin*, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

    a. The probability of success in the litigation;

    b. The complexity, expense, and likely duration of the litigation;

    c. The possibilities of collecting on any judgment which might be obtained;

    d. All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

    e. Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968). *See also Martin*, 91 F.3d at 393. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved. Instead, the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" Collier on Bankruptcy at ¶ 9019.2, 9019-4, *quoting In re Drexel Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991). *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

18. The Stipulation and the proposed settlement and compromise embodied therein meet the above criteria. The Stipulation will result in the receipt of substantial funds for the benefit of the Estates, while, in the absence of the Stipulation, it is uncertain whether any significant portion of those funds would be available. Of particular significance in this respect is the fact that the Trustee is not aware of any grounds on which Atalaya's security interest might be avoided or otherwise challenged. Without Atalaya's agreement, the Trustee would only be able to realize any recoveries for the benefit of the Estates to the extent that Atalaya were oversecured. Under the Stipulation, however, the Estates will recover significant funds even if it turns out that Atalaya is undersecured.

19. In exchange for the benefits that will be realized under the Stipulation, the Trustee has had to, in material part, acknowledge the validity of Atalaya's security interest and waive various claims against Atalaya. Based on the Trustee's reasonable investigation, he has

concluded that the benefits that will be realized under the Stipulation are of significantly greater value than the rights that are being compromised.

20. For these reasons, the Trustee, based upon the exercise of his business judgment, respectfully submits that the Stipulation is fair and equitable, in the best interests of the Estates and creditors, and well within the range of reasonableness required under applicable authorities. Accordingly, the Stipulation should be approved by the Bankruptcy Court.

## **NOTICE**

21. The Trustee shall promptly serve a copy of this Motion on: (a) counsel to the Debtors; (b) the United States Trustee; (c) counsel to Atalaya; (d) counsel to Midtown Madison; (e) counsel for EG Insurance Holdco., LLC; (f) the Debtors' scheduled secured creditors listed on schedule D for each debtor; and (g) all parties in interest having requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). In light of the nature of the relief requested herein, the Trustee submits that such notice is sufficient.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in the form attached hereto approving the Stipulation, authorizing the Trustee to take any and all actions necessary or appropriate to implement the terms and provisions of the Stipulation, approving limited notice upon the Notice Parties as provided herein, and providing that the

Bankruptcy Court retains jurisdiction to enforce the Stipulation.

Dated: July 24, 2020
      Wilmington, Delaware

COZEN O'CONNOR

By: */s/ Mark E. Felger*
Mark E. Felger (DE No. 3919)
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2028
mfelger@cozen.com

*Special Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*