## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 20-10524 |
| WINDHAVEN TOP INSURANCE | ) | |
| HOLDINGS, LLC, et. al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## <u>OPINION</u>

GEBHARDT & SMITH LLP
Lisa Bittle Tancredi
1000 N. West Street
Suite 1200
Wilmington, DE 19801

Counsel for Risk & Regulatory
Consulting, LLC

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Eric D. Schwartz
Matthew B. Harvey
Paige N. Topper
1201 N. Market St., 16th Floor
Wilmington, DE 19899-1347
        - and –
HOGAN LOVELLS US LLP
Peter Ivanick
Alex M. Sher
390 Madison Avenue
New York, NY 10017

Counsel to Atalaya Capital Management LLP,
Atalaya Special Opportunities Fund VII LP,
and Midtown Madison Management LLC

COZEN O'CONNOR
Mark E. Felger
Barry M. Klayman
Gregory F. Fischer
1201 North Market Street
Wilmington, DE  19801

Special Counsel to Jeoffrey L.
Burtch, Chapter 7 Trustee

Dated: October 15, 2021

Sontchi, J._____

# INTRODUCTION[1]

Before the Court is the Motion of Risk & Regulatory Consulting, LLC ("RRC"), as the Special Deputy Receiver of Windhaven National Insurance Company for Relief from the Automatic Stay to Litigate Certain Disputes in the District Court of Travis County, Texas, filed on September 11, 2020[2] (the "Motion").  The Court held a hearing[3] on the Motion on October 14, 2020 and took this matter under advisement.  In the Motion, RRC seeks relief from the automatic stay claiming that the Bankruptcy Code is reverse preempted by the Texas Insurance Code, and even if it is not "cause" exists to lift the stay; further asserting, in the alternative, that this Court should abstain from hearing the dispute.  As set forth below, the Bankruptcy Code is not reverse preempted by the Texas Insurance Code, this dispute involves, at its base, a contract dispute which will determine the owner of the Disputed Funds, as defined below.  Furthermore, RRC has not established cause for lifting the stay.  Lastly, the Court will not abstain from hearing the contract dispute.

# JURISDICTION

This Court has jurisdiction over this motion for relief from the automatic stay pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29,

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them *infra*.

[2]  D.I. 140, the Chapter 7 Trustee's (the "Trustee") objection to the Motion (D.I. 146), the joinder of Atalaya Special Opportunities Fund VII LP and Midtown Madison Management, LLC to the Trustee's objection (D.I. 147), and RRC's reply (D.I. 157).

[3]  *See* D.I. 166 (Tr. of Hr'g Oct. 14, 2020).

2012.  This is a core proceeding under 28 U.S.C § 157(b).  Venue for this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Local Rule 9013-1(f), the Movant consents to entry of a final order by this Court in determination of this Motion.[4]

**FINDINGS OF FACT**

### A.  Background of these Cases

On March 5, 2020, (the "First Petition Date"), Debtors Windhaven Underwriters, LLC ("WU"), Windhaven Select, LLC ("WS"), Windhaven Top Insurance Holdings LLC, and Windhaven Insurance Services, LLC ("WIS") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

On March 18, 2020 (the "Second Petition Date"), Debtors Clutch Analytics LLC ("Clutch Analytics"), Whited and Sons LLC, Clutch Wholesale Insurance Agency LLC, Windhaven Claims Management, LLC ("WCM"), Windhaven National Holding Company, and The Hearth Insurance Group, LLC (the "Hearth") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

On April 3, 2020 (the "Third Petition Date," and together with the First Petition Date and Second Petition Date, the "Petition Dates," and each a "Petition Date"), Debtor Windhaven Insurance Holdings Corporation ("WIHC") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code with the Bankruptcy Court.

---

[4] RRC does not consent to entry of a final order by this Court with regard to the parties' relative rights in the Disputed Funds if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

The Trustee was appointed by the Office of the United States Trustee to serve as the duly authorized Trustee for the Debtors' Estates, and he continues to serve in this capacity.

### B.  Managing General Agents

Windhaven Services, LLC, entered into a Managing General Agent Agreement[5] with Windhaven National Insurance Company ("WNIC"),[6] effective as of April 1, 2015 (the "WNIC MGA Agreement"), and WIS entered into a similar agreement with WNIC, effective as of July 1, 2018 (collectively with the WNIC MGA Agreement, the "MGA Agreements").

Under the MGA Agreements, WNIC appointed Windhaven Services and WIS as Managing General Agents ("MGAs") to perform certain policy administration, underwriting and processing services on behalf of WNIC.  Pursuant to the MGA Agreements, "[t]he Managing General Agent has the authority and duty to act on behalf of the Company in all respects, insofar as necessary for the Managing General Agent to perform the function of a managing general agent for the Company."[7]  That included the

---

[5] Capitalized terms used herein regarding the MGA Agreements shall have the meaning ascribed to them in the MGA Agreements.

[6]  WNIC is a non-debtor insurance company that is in liquidation in receivership proceedings before the Receivership Court in the case styled as *The State of Texas v. Windhaven National Insurance Company*, Cause No. D-1- GN-20-001052 (the "Texas Receivership Proceedings"), under the Insurer Receivership Act, Title 4, Subtitle C, Chapter 443 of the Texas Insurance Code.

[7]  MGA Agreements, § 2.1.

authority to accept applications, binders, and Policies for classes or lines of insurance underwritten by WNIC.[8]

The MGAs' sole compensation for services performed for WNIC under the MGA Agreements was commissions based upon Net Collected Premiums.[9]  "Net Collected Premium" is defined as "the total of all currently collected premiums (including down payments) on policies written by the [MGA] between the Company and the [MGA] less return premium and cancellations."[10]  The MGA Agreements provided that the MGAs were entitled to retain the policy fee less premium taxes.[11]  The MGAs were required to establish and maintain separate Premium Escrow Accounts, and all premiums collected by the MGAs on business produced under the MGA Agreements were to be deposited into those accounts.[12]  The MGAs were required to remit the balance of the accounts (premium minus commissions, losses and loss adjustment expenses) to WNIC on a periodic basis.[13]

The MGA Agreements provided that the MGAs would accept and hold all premiums collected and other funds relating to the business written under the MGA

---

[8]  *Id.*

[9]  *Id.*, Art. 3.

[10]  *Id.* at § 5.1.

[11]  *Id.* at § 3.7.

[12]  *Id.* at § 7.3.

[13]  *Id.* at § 5.2.

Agreements in a fiduciary capacity. "The privilege of retaining commissions shall not be construed as changing the fiduciary capacity."[14]

Interest income from the Premium Escrow Accounts and the cost of maintaining the Escrow Accounts belonged to the MGAs.[15] The MGA Agreements provided that "[a]ll funds and invested assets of the Company are the exclusive property of the Company, held for the benefit of the Company, and are subject to the control of the Company."[16]

The MGA Agreements provided that in the event WNIC were placed in receivership or seized by the Texas Commissioner of Insurance under Texas Insurance Code Chapter 443, all the rights of WNIC under the MGA Agreements would extend to the Receiver or Commissioner.[17]

A number of disputes between the Movant and the Trustee have arisen concerning the following funds (collectively, the "Disputed Funds"): (1) approximately $3,000,000 currently held in Premium Escrow Accounts nominally titled in the names of the MGAs, which they hold as trustees and fiduciaries, for the benefit of WNIC, (2) approximately $57,200 held in a refund account which Windhaven Services holds as a fiduciary for the benefit of certain of WNIC's policy holders, (3) an additional $338,923.27 belonging to WNIC that appears to have been inadvertently deposited into a premium escrow account

---

[14] *Id.* at §7.1.

[15] *Id.* at §§ 7.3 and 7.7.

[16] *Id.* at § 7.11.

[17] *Id.* at § 14.10.

of another insurance company (Old American Insurance Company), which funds are similarly held by the debtors as trustees and fiduciaries for the benefit of WNIC, and (4) more than $3,000,000 of payments by consumers for insurance policies issued by WNIC, held by a credit card processor in the name of one of the debtors, in a fiduciary capacity per the MGA Agreements.

RRC asserts that the Disputed Funds are not property of the bankruptcy estates because they are held by the Debtors in a fiduciary capacity for the benefit of WNIC. The Trustee, however, asserts a right of setoff and refuses to turn the Disputed Funds over to the RRC. The disputes between RRC and the Trustee concerning the Funds shall be referred to herein as the "Funds Dispute."

## ANALYSIS

### A.    Texas Statute Reverse Preemption

RRC asserts that applicable Texas statute reverse-preempts (or may reverse preempt) certain provisions of the Bankruptcy Code. The McCarron-Ferguson Act[18] provides that no federal law preempts any state law promulgated "for the purpose of regulating the business of insurance."[19]

> The statute did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to "laws regulating the business of insurance." Insurance companies may do many things which are subject to paramount federal regulation;

---

[18] *See* 15 U.S.C. §§ 1011-1015.

[19] *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205 (1979).

> only when they are engaged in the "business of insurance"
> does the statute apply.[20]

As such, if a specific state law regulating the business of insurance conflicts with a generally applicable federal law, state law controls.

> The Supreme Court held:

>> the prerequisites for reverse-preemption as identified in the statute: (1) the federal statute does not specifically relate to insurance, (2) the state statute was enacted to regulate the business of insurance, and (3) the federal statute would invalidate, impair, or supercede the statute.[21]

It is clear that the Bankruptcy Code does not specifically relate to the business of insurance,[22] thus, the Court need only answer (i) whether the state statute in question, the Insurer Receivership Act, Chapter 443 of the Texas Insurance Code, and its specific provisions are implicated here were enacted to regulate the business of insurance, and (ii) whether application of the Bankruptcy Code would "invalidate, impair, or supercede" the Texas insurance statutes.

The parties and the Court agree that the first remaining question is also met. It is clear that the Insurer Receivership Act, Chapter 442 of the Texas Insurance Code, governs insolvent insurers and was enacted for the purpose of regulating the business of insurance.

Thus, the Court is left with whether the bankruptcy court's jurisdiction over the MGA Agreements invalidates, impairs, or supersedes state law. Here, the issues raised

---

[20] *Id.* (*citing SEC v. Nat'l Securities, Inc.*, 393 U.S. 453, 459-60 (1969)).

[21] *In re Med. Care Mgmt. Co.*, 361 B.R. 863, 871 (Bankr. M.D. Tenn. 2003) (*citing U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 500-01 (1993)).

[22] *Med. Care Mgmt. Co.*, 361 B.R. at 871.

by the Motion is, whether under the MGA Agreements, who is entitled to funds in the Premium Escrow Accounts held by the Debtors and the fund held by the non-party credit card processor in the name of the Debtors.

RRC asserts that this is a matter of the Texas Insurance Code; however, what the Court is tasked with interpreting is the MGA Agreements. The Texas Insurance Code does not govern all aspects of insurance companies but *only* the business of insurance.[23] For example, in *U.S. Dept. of Treasury v. Fabe*, the United States Supreme Court considered whether the state statute establishing the priority of creditor's claim in a proceeding to liquidate an insolvent insurance company was a law enacted "for the purpose of regulating the business of insurance," within the meaning of McCarran-Ferguson Act.[24] The Supreme Court held that state statute escapes federal pre-emption to the extent that it protects *policyholders*.[25]  Although the state statute references the "expenses of administering the insolvency processing is reasonably necessary to further the goal of protecting policyholders . . .  the preferences conferred upon employees and other general creditors do not escape pre-emption because their connection to the ultimate aim or

---

[23] *See Grp. Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. at 211 ("'The statute did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance.' Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply.'" (citation omitted); *Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65, 71, 79 S. Ct. 618, 622, 3 L. Ed. 2d 640 (1959) (holding that companies that issue annuities is the consumer assuming the risk of investment based on the performance of the annuity was not the type of insurance-business subject to reverse preemption).

[24] *U.S. Dep't of Treasury v. Fabe*, 508 U.S. at 493.

[25] *Id*. at 494.  *See also Sec. & Exch. Comm'n v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. at 71 ("Statutes aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly, are laws regulating the 'business of insurance,'" within the meaning of the phrase.).

insurance is too tenuous."[26]  In other words, if the dispute revolves around the ultimate goal of protecting policyholders then the state statue could reverse-preempt the Bankruptcy Code.

Here, when the Texas insurer's financial condition becomes impaired, the Insurer Receivership Act portion of the Texas Insurance Code applies.  The purpose is to protect the interests of the insureds, claimants, creditors and the public though the "enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation."[27]  The Texas Insurance Code states its goals are:

> providing for a comprehensive scheme for the receivership of insurers and those subject to this chapter as part of the regulation of the business of insurance in this state because proceedings in cases of insurer insolvency and delinquency are deemed an integral aspect of the business of insurance and are of vital public interest and concern.[28]

Here, the Funds Dispute does not go to the business of insurance, policyholders, or public interest.  At its core, this is a contract dispute between the parties which will determine which of the Disputed Funds belong to the estate and which of the Disputed Funds are held in escrow.  Such is not regulated by the Texas Insurance Code.

> Case law is clear that the McCarran-Ferguson Act does not deprive a federal court of its valid jurisdiction, and that "a federal court's determination of rights to that property, without more, does not invalidate, impair or supersede state insurance law — even if the federal court later decides that

---

[26] *Id.* at 509.

[27] Tex. Ins. Code § 443.001(e)(3).

[28] Tex. Ins. Code § 443.001(e)(7).

> the property never becomes property of the insurer's
> estate."[29]

RRC asserts that the Disputed Funds are held in trust and may not be property of the

Debtors' bankruptcy estates pursuant to Section 541(d) of the Bankruptcy Code.

However, as held in *Navarro*, the federal court retains jurisdiction to determine of the

rights to the Disputed Funds, *even if* the Disputed Funds never become property of the

Debtors' estates.

As a result, this Court is not reverse pre-empted from determining whether the

Disputed Funds are part of the estate, because at its base the Court will be interpreting

the MGA Agreements (even though various provisions of the MGA Agreements are

mandated by the Texas Insurance Code).

## B.    Motion for Relief from Stay

RRC seeks relief from the automatic stay for "cause" to allow the Receivership

Court to adjudicate the disputes and determine the parties' relative rights to the Disputed

Funds.

First, RRC asserts that "cause" exists under 11 U.S.C. §362(d)(1) when the

application of the Bankruptcy Code is reverse preempted under the McCarran-Ferguson

Act. However, as the Court held above, here the McCarran-Ferguson Act does not

reverse pre-empt the Bankruptcy Code under these circumstances.

---

[29] *Navarro v. Patriot Nat'l, Inc. (In re Patriot Nat'l, Inc.)*, 623 B.R. 696, 706 (D. Del. 2020).

Second, RRC asserts that the Court may permit the parties to resolve issues of state law in non-bankruptcy forums, even when, as here, reverse-preemption does not require it.

Courts conduct a "fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."[30] Courts apply a three-pronged standard: (1) whether any great hardship will be suffered by the bankruptcy estate from lifting the stay; (2) whether the hardship to the non-debtor party by maintenance of the stay outweighs the hardship to the estate; and (3) the probability of the non-debtor prevailing on the merits.[31]

In *In re Downey Financial Corp.*,[32] the dispute involved a director and officer insurance policy from which the directors and officers were seeking coverage for defense costs.[33] The Court found that the defense costs (which had already been largely incurred) were far less than the policy limits under the insurance policy and were unlikely to impact the debtor.[34] The Court held that the policy proceeds were not property of the estate, but if they were, "cause" existed to lift the automatic stay because it was unlikely that the insurance proceeds would benefit the estate. This is inapposite to the matter before the

---

[30] *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr.D.Del.2007); *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir.1997); *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D.Del.1993).

[31] *In re Downey Financial Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010).

[32] Cited by RRC for the proposition that "even if the debtor's interest in insurance policy proceeds were sufficiently remote to bring them outside of the bankruptcy estate, the debtor's interest was not strong enough that it would suffer 'great prejudice' if the stay were lifted." *See* Memorandum in Support of the Motion for Relief at p. 22.

[33] *In re Downey Fin. Corp.*, 428 B.R. at 609.

[34] *Id.*

Court here.  Here, the question is whether the Disputed Funds are property of the estate, and if they are, the *res* Debtors' estate will be impacted.  *In re Downey* was about whether the directors and officers would exhaust the insurance and impact the estate and whether the director and officer insurance policy itself was property of the estate.  Here, the MGA Agreements will be interpreted as contracts and such interpretation will determine whether the Disputed Funds are property of the estate.  The insurance policy in *Downey* would not add to the *res* of the estate as it will do here if the Disputed Funds are indeed property of these estates.

With that backdrop, the Court will examine the three factors.

i.    **Hardship to the Debtors**

RRC asserts that the Trustee would not suffer harm as its counsel has offices in Texas.  The Trustee responds that litigating in Travis County, Texas would result in additional costs and expense to the estate.  The Trust claims that the additional costs will be a significant burden to the estates.

Regardless of where the Trustee's counsel's law firm has offices, the Trustee's counsel is located in Delaware.  It would add significant costs for the Trustee to litigate the Disputed Funds in Texas.  As a result, lifting the stay would cause a hardship for the Trustee.

ii.    **Hardship to RRC**

RRC asserts that the Texas Insurance Commissioner would be harmed if relief were not granted as it has an interest in the Receivership Court interpreting the Texas Insurance Code.  The Trust responds that just as the Receiver has an interest in the MGA

Agreements being interpreted by the Receivership Court, the Trustee has an equal interest in having the MGA Agreements interpreted by this Court.

RRC's only argument regarding its hardship is its preference to have the Disputed Funds decided by the Texas Receivership Court.[35]  A preference is not a hardship, and other than RRC's reverse-preemption argument, which fails, RRC has made no showing of hardship in having this matter litigated in this Court.

### iii.    Probability of Success on the Merits

RRC's argument for probability of success on the merits is also without merit.[36] RRC cites two cases regarding a showing of probability of success on the merits being a "slight" burden in order to lift the stay.  First, *In re Tribune Co.*,[37] the Bankruptcy Court specifically rejected the proposition that the California District Court was more familiar with issues related to the television and film industry, and held "[b]ankruptcy courts routinely decide disputes involving a variety of subject matters and are often called upon to interpret and apply non-bankruptcy law, including contracts involved in specialized industries."[38] Similarly, here, although the Texas court may be more familiar with issues

---

[35]  Specifically, RRC states: "The Texas Insurance Commissioner would be harmed if relief were not granted; it has an important interest in having the Texas Insurance Code interpreted by the Receivership Court, as the Texas legislature expressly intended."  Brief in Support of Motion, pp. 22-23.

[36]  More specifically, RRC's argument is as follows: "The Movant has more than a slight probability of success (1) if the stay is lifted and the parties' rights to the Funds are determined under Texas law by the Receivership Court, or (2) if the stay is not lifted and it pursues an appeal based in part on the McCarran-Ferguson Act."  Brief in Support of Motion, p. 23.

[37]  Cited by RRC for the proposition that even a movant's slight economic and strategic hardship was enough coupled with a slight showing of the movant's probability of success on the merits.  *See* Memorandum in Support of the Motion for Relief at p. 22.

[38]  *In re Trib. Co.*, 418 B.R. 116, 129 (Bankr. D. Del. 2009) (deciding on other grounds to lift the stay because the debtors were a national enterprise with affiliates in California, the events at issue in the lawsuit took

involving the Texas Insurance Code, this court is capable of interpreting and applying non-bankruptcy law, including contracts involving insurance matters. Furthermore, here there is no showing of RRC's (alleged) economic and strategic hardship nor a showing of a slight probability of success on the merits. At most, RRC has raised the issue of reverse preemption, which is inapplicable. As a result, the Court is capable of interpreting the Texas Insurance Code and neither party has made even a slight showing of probability of success on the merits. RRC's bald statements of prejudice are not enough to create a showing of even a slight economic or strategic hardship.

Secondly, *In re SCO Group, Inc.*,[39] the movant and the debtor were already involved in litigation that had advanced to its final stages in another court, and the Court left them to their chosen forum. In the present case, by contrast, litigation in Texas has not even been commenced.[40]

If this Court determines that the Disputed Funds are not property of the Debtors, the Disputed Funds will be turned over. There is nothing in the pleadings to make this Court believe that the RRC is more likely than not to succeed on the merits.

---

place in California, and the movant made a showing of probability of success based on a detailed declaration that identified potential witnesses and other facts to support his position. *See id.* at 129.).

[39] Cited by RRC for the proposition that "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *See* Memorandum in Support of the Motion for Relief at p. 22 (*quoting In re SCO Group, Inc.*, 395 B.R. at 859).

[40] *In re SCO Grp., Inc.*, 395 B.R. at 859–60 ("Of particular importance to the Court are the specialized knowledge that the District Court has developed in presiding over the Lawsuit for four years, the interests of judicial economy and the expeditious and economical resolution of litigation and, as stated earlier, the fact that the parties are ready for trial." (footnote omitted)).

## C.    Permissive Abstention

Lastly, the Receiver argues that this Court should permissibly abstain from hearing the Funds Dispute.

"Permissive abstention arises under title 28 of the United States Code, which provides that 'nothing in [the grant of original jurisdiction] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding under title 11 or arising in or related to a case under title 11.'"[41]

> Twelve factors are considered by courts in the Third Circuit when deciding whether to abstain: (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1); (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.[42]

---

[41] 7 *Collier Bankruptcy Practice Guide* P 132.02 (16th ed. 2021) (citing 28 U.S.C. § 1333(c)(1)).

[42] *In re Maxus Energy Corp.*, 560 B.R. 111, 124-25 (Bankr. D. Del. 2016) (citing *In re Integrated Health Servs.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003)).

Out of these twelve, "three factors are given more weight than the others: (1) the effect on the administration of the estate; (2) whether the claim involves only state law issues; and (3) whether the proceeding is core or non-core."[43]

Additionally, "the evaluation of the above factors is not absolute: 'Evaluating the[se] twelve factors is not a mathematical formula[,]'"[44] but rather "involves an equitable consideration of the circumstances and weighing of the factors."[45] The court will address each of the factors below.

### i.    The Effect or Lack Thereof on the Efficient Administration of the Estate

"The fact that the Claims are property of the bankruptcy estate and are therefore necessary to the efficient administration of the estate, does not require this Court to retain jurisdiction, either: '[b]ecause every claim of a debtor in possession is an asset of the estate, this is not sufficient to warrant the retention of federal jurisdiction over these claims.'"[46] Additionally, "'an enhanced distribution in the bankruptcy case,' is not sufficient to oppose remand."[47] While the Trustee was somewhat persuasive in establishing the expenses of litigating in Texas, the Receiver points out, "[t]he Trustee's

---

[43] *In re Patriot Nat'l, Inc.*, 623 B.R. 696, 712 (D. Del. 2020) (citing *In re Welded Constr., L.P.*, 609 B.R. 101, 112 (Bankr. D. Del. 2019)); *see also In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) ("Some factors are more substantial than others, such as the effect on the administration of the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157.").

[44] *In re Maxus Energy Corp.*, 560 B.R. at 124-25 (citing *In re LaRoche Indus., Inc.*, 312 B.R. 249, 255 (Bankr. D. Del. 2004)).

[45] *In re Maxus Energy Corp.*, 597 B.R. 235, 247 (Bankr. D. Del. 2019).

[46] *In re Maxus Energy Corp.*, 560 B.R. at 125 (referencing *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991)).

[47] *In re Maxus Energy Corp.*, 560 B.R. at 125 (citing *In re Integrated Health Servs., Inc.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003)).

counsel, Cozen O'Conner has an office in Texas."[48]  Further, "'[w]hile any one of the contested matters is substantial, it alone will not determine [. . .] success or failure' of the administration of the estate."[49]

Here the administrative costs to the estate, the Bankruptcy Court's interest in determining the property of the estate, as well as the crux of the dispute being contract interpretation of the MGA Agreements, disfavors abstention.

### ii.    The Extent to which State Law Issues Predominate Over Bankruptcy Issues

Though there is debate as to the complexity of the state law issues before the Court, the case resolves around issues of contract law.  "The Bankruptcy Court is accustomed to and quite capable of determining rights under state law[,]"[50] and it is not within the clear purview of the Texas courts to decide the issues.  Here, the heart of the dispute concerns interpretation of the MGA Agreements, as such, this factor disfavors abstention.

### iii.    The Difficulty or Unsettled Nature of the Applicable State Law

The Receiver points to *Lincoln General*, where the District Court and the Circuit Court came to different results, to demonstrate the issue is difficult and complex in application.[51]  However, as this Court has previously indicated, risk of reversal by an

---

[48] D.I. 140-2 at 25 (Memorandum in Support of the Motion for Relief).

[49] *In re Maxus Energy Corp.*, 560 B.R. at 125 (Bankr. D. Del. 2016) (citing *In re Integrated Health Servs., Inc.*, 291 B.R. at 619).

[50] D.I. 140 at 2 (Motion for Relief).

[51] D.I. 166 at 33: 5-7 (Transcript of Hearing) (referencing *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716 (5th Cir. 2015) and *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 892 F. Supp. 2d 787 (N.D. Tex. 2012)).

appellate court does not just exist on complex areas of law alone.[52]  However, even if the complexity weighs in disfavor of abstention, the unsettled nature of the proceeding leans the other way; though this case rests on interpretation of the Texas Insurance Code, there is no case law addressing these particular issues.[53]  As there is a split between "complex" and "unsettled," this factor is neutral.

### iv.    The Presence of a Related Proceedings Commenced in State Court or Other Non-Bankruptcy Court

Although WNIC, a non-debtor, is in Receivership in Texas, "litigation has not even been commenced" concerning the issue of the Disputed Funds[54].  While this may not provide much context to the extent of the potential proceeding, "Courts have not frequently afforded this factor a significant amount of weight on its own."[55]  As such, this factor is neutral.

### v.    The Jurisdictional Basis, if any, Other than 28 U.S.C. § 1334(c)(1)

There is no basis for jurisdiction other than 28 U.S.C. § 1334.[56]  This factor weighs in favor of abstention.

---

[52]  *See* D.I. 166 at 33: 12-13 (Transcript of Hearing).

[53]  D.I. 140-2 at 2 (Memorandum in support of the Motion for Relief).

[54]  D.I. 146 at 14 (Objection to Relief).  *See, e.g. In re SCO Grp., Inc.*, 395 B.R. at 859–60 (case had been pending before the District Court for four years prior to the filing of the bankruptcy case).

[55]  *In re Maxus Energy Corp.*, 560 B.R. at 126 (referencing *In re Fruit of the Loom, Inc.*, 407 B.R. 593 (Bankr. D. Del. 2009)).

[56]  *See, e.g., In re Integrated Health Servs., Inc.*, 291 B.R. at 621; *In re LaRoche Indus., Inc.*, 312 B.R. at 254; *In re Fruit of the Loom, Inc.*, 407 B.R. at 602; *In re Maxus Energy Corp.*, 560 B.R. at 126; *In re Maxus Energy Corp.*, 597 B.R. at 248.

### vi.    The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case

As of now, there is no active proceeding occurring in the state courts.[57] "The Ninth Circuit has held that '[a]bstention can exist only where there is a parallel proceeding in state court.'"[58]   While this is dispositive in a mandatory abstention analysis, this Court has concluded "that it is not dispositive (but is only one factor) in considering discretionary abstention."[59]   This factor disfavors abstention.

### vii.    The Substance Rather than the Form of an Asserted "Core" Proceeding

The Third Circuit provides an analysis to determine if the proceeding is "core" or "non-core."[60]

> First, the Court advised looking to § 157(b), which "provides an illustrative but non-exclusive list of proceedings that may be considered core." Next, in the event a certain proceeding is not explicitly listed, "a proceeding is core (1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." As opposed to core proceedings, non-core proceedings "include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Specifically, "[w]here a claim or cause of action is filed prior to confirmation of a plan, 'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.' "[61]

---

[57]  D.I. 146 at 14 (Objection to Relief).

[58]  *In re Integrated Health Servs., Inc.*, 291 B.R. at 621 (citing *Sec. Farms v. Int'l Bhd. of Teamsters,* 124 F.3d 999, 1009 (9th Cir. 1997)).

[59]  *In re Integrated Health Servs., Inc.*, 291 B.R. at 621 (Bankr. D. Del. 2003).

[60] *See generally Halper v. Halper*, 164 F.3d 830 (3d Cir.1999).

[61] *In re Maxus Energy Corp.*, 560 B.R. at 126-27 (internal citations omitted).

Much like this Court's determination in *Maxus*, "[i]t is undeniable that the outcome of the issues presented in the Claims will ultimately have an effect on the administration of the Debtors' estate."[62]

Similar to *In re Longview*, "the [Trustee] argue[d] that the entire Complaint [was] a core proceeding under 11 U.S.C. § 541, and that the Complaint [could] only arise in the context of a bankruptcy proceeding because it [was] necessary to determine plan feasibility."[63]  Additionally, "[the Trustee] point[ed] the Court's attention to the assignment of proceeds of the Title Insurance Policy, and note[d] that these proceeds [would] represent the largest liquid asset in this case."[64]  "Judge Shannon agreed with the contention 'the prospect that a claim may provide economic benefit to the estate does not factor into the determination of whether a claim is core or non-core.'"[65]  While the claim "may provide economic benefit to the estate,"[66] it does not render the matter "core;" this factor favors abstention.

---

[62]  *Id.* at 127.

[63]  *In re Longview*, 515 B.R. 107, 113 (Bankr. D. Del. 2014).

[64]  *In re Longview*, 515 B.R. at 113.

[65]  *In re Maxus Energy Corp.*, 560 B.R. at 126-27 (citing *In re Longview*, 515 B.R. at 113).

[66]  *In re Longview*, 515 B.R. at 115 (citing *In re Stone & Webster*, 367 B.R. 523, 528–29 (Bankr. D. Del. 2007)).

viii.    **The Feasibility of Severing the State Law Claims From Core Bankruptcy Matters to Allow Judgments to be Entered in State Court with Enforcement Left to The Bankruptcy Court**

"Although the Claims' resolution may ultimately impact economic and financial aspects of the Debtors' estate, that fact is insufficient to find that the Claims are core and unable to be severed from any other claims deemed to be core."[67]  This factor is neutral.

ix.    **The Burden on the Court's Docket**

While this action will certainly add to the Court's burden, it would not be to the extent of other cases who have determined this factor favors abstention.[68]  In this context, the factor is neutral.

x.    **The Likelihood that the Commencement of the Proceeding in a Bankruptcy Court Involves Forum Shopping by One of the Parties**

As this Court is the situs for the bankruptcy proceeding and the other issues arise only in the court for which permissive abstention is requested, the risk of forum shopping is low.  This factor is neutral.

xi.    **The Existence of a Right to a Jury Trial**

*Lincoln General* was on a similar issue and was conducted as a bench trial.[69]  Furthermore, there is nothing in the briefing to suggest the state action would commence

---

[67]  *In re Maxus Energy Corp.*, 560 B.R. at 127 (referencing *In re Longview*, 515 B.R. at 115 and *In re Fruit of the Loom, Inc.*, 407 B.R. at 601 ("As there are no "core" bankruptcy issues, severance of state law claims is not necessary")).

[68]  *See In re Fruit of the Loom, Inc.*, 407 B.R. at 601 ("We are in the midst of the most severe recession and credit crisis in decades, and the volume of major chapter 11 filings in this Court has risen to an unprecedented level."); *see also In re LaRoche Indus., Inc.*, 312 B.R. at 255 ("[T]his Court is tremendously overburdened. This action will unnecessarily add to that burden.").

[69]  D.I. 166 at 21: 15-19 (referencing *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 892 F. Supp. 2d 787 (N.D. Tex. 2012)).

otherwise.  "[T]his Court has favored abstention when faced with the possibility of a jury trial being required in the future."[70]  Therefore, this factor favors abstention.

### xii.    The Presence in the Proceedings of Nondebtor Parties

Though RRC is a non-debtor party to the proceeding, the Trustee, on behalf of the Debtors estates and RRC are both closely connected to the Debtors.  As such, this factor is neutral.

The factors weigh against abstention, including all of the weighted factors, permissive abstention is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court will deny the Motion.  An order will be entered.

---

[70] *In re Maxus Energy Corp.*, 560 B.R. at 128 (Bankr. D. Del. 2016) (referencing *In re Fruit of the Loom, Inc.*, 407 B.R. at 601 ("[T]hough neither party has requested a jury trial yet, breach of contract is triable by a jury. As this Court cannot conduct a jury trial, this [factor] favors abstention.")).  *See also* MGA Agreements, § 20.13 ("Waiver of Jury Trial").